409 So.2d 556 (1982)
STATE of Louisiana
v.
Robert J. RODRIGUE.
No. 81-K-1206.
Supreme Court of Louisiana.
January 25, 1982.
*558 Joseph R. Raggio, Baton Rouge, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Norval J. Rhodes, Dist. Atty., James L. Alcock, Asst. Dist. Atty., for plaintiff-respondent.
DENNIS, Justice.
Defendant, Robert J. Rodrigue, has been charged with the second degree murder and attempted aggravated rape of a 51-year-old woman who disappeared from the streets of Houma, Louisiana, on October 24, 1979. We granted writs in this case to determine whether the trial court correctly denied his motions for change of venue and to suppress inculpatory statements.
On the evening of October 24, 1979, the victim in this case, a 51-year-old accountant, dropped her children off at a football game while on her way shopping. Later that night her abandoned car and purse were found. Her disappearance became the leading story in the local newspaper and on radio for the next ten days. On November 3, 1979, her partially decomposed body was found in a bayou a few miles from Houma. An autopsy revealed that the cause of her death was strangulation. In the wake of this seemingly random slaying, alarm swept the community inciting public officials and citizens to establish a reward fund and to bring in psychics to track down the killer. On November 17, 1979, the sheriff, accompanied by a newspaper publisher and one of his reporters, arrested the defendant outside his residence in Houma during a highly publicized encounter. On December 7, 1979, the defendant was indicted for these and other unrelated sex crimes which allegedly occurred in September, 1979.
Defendant filed motions to change venue and to suppress inculpatory statements. Hearings were held on the venue motion on April 7, 1980, and November 18, 1980, the latter consisting of a "dry-run" voir dire of thirty prospective jurors. At its conclusion the trial court denied the change of venue. After a hearing, the court also denied the defendant's motion to suppress on November 12, 1980. This court granted writs on September 9, 1981.

*559 THE MOTION TO CHANGE VENUE

(ASSIGNMENT OF ERROR NO. 1)
In rejecting the motion for a change of venue, the trial court in brief oral comments noted that the question was close, but he apparently concluded that the defendant failed to carry his burden of proof "that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending." La.C.Cr.P. art. 622. See, State v. Bell, 315 So.2d 307 (La.1975).[1] Although the trial court possesses a broad range of discretion in this area, see, e.g., State v. Adams, 394 So.2d 1204 (La.1981); State v. Felde, 382 So.2d 1384 (La.1980); State v. Sonnier, 379 So.2d 1336 (La.1980); we are required to make an independent evaluation of the circumstances to determine whether the accused can receive a fair trial in the parish, unfettered by outside influence. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966).
In our review, we have the benefit of the record in a well tried venue change hearing, including a "dry-run" voir dire of thirty prospective jurors. The instant record demonstrates that counsel for the defendant conducted a painstaking, meticulous voir dire of the prospective jurors. Twenty-six of the prospective jurors had read newspaper accounts or had heard radio reports of the crime. Nevertheless, only nine of the veniremen said that they had formed an opinion as to the defendant's guilt. We believe that had this been an actual voir dire, and not a "dry-run," 12 jurors could have been selected having a juror's minimum qualification of being able to "lay aside his impressions or opinions and render a verdict based on the evidence presented in court." Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).
In deciding whether to grant a change of venue, however, the court must consider whether the prejudice, influence, or other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at trial. La.C.Cr.P. art. 622. Our review convinces us that despite relatively intense publicity about a fearsome, random murder in the small community, a large part of which was unnecessarily engendered by the sheriff, the answers of the jurors on voir dire examination were not affected. The bulk of the publicity consisted of straight news reporting, by radio and newspaper only, which occurred nearly one year before the "dry-run" voir dire.
The most objectionable aspect of this case is the conduct of the sheriff in arranging for a publisher-photographer and reporter to be present at the defendant's arrest. Coming on the heels of the victim's disappearance, the discovery of her body, and the suspenseful manhunt, the front page photograph of defendant in handcuffs and the feature coverage of his squad car ride to the court house raised his identity factor to *560 a near maximum level. If the "dry-run" voir dire hearing had been held shortly after these events we could not have found with any confidence that prejudice, influence or other factors had not affected the answers of the jurors. The experimental voir dire was conducted over a year after the defendant's arrest, however, and our independent review of the record convinces us that the jurors' answers were not affected by the publicity surrounding the crime and arrest.
Additionally, we are influenced in our decision by the fact that by the time our judgment is final over two years will have elapsed since the crime and the period of intense publicity following it. In all probability, the force of the publicity will have been spent before the time the case is set for trial. Cf. United States v. Carper, 13 F.R.D. 483 (D.D.C.1953). Nevertheless, in case we have misjudged the situation in our independent review of the facts, or in the event of further unnecessary release of publicity, the ruling denying the motion for change of venue is vacated, and the trial court is instructed to defer ruling thereon until after the voir dire in case difficulty is encountered in obtaining an unbiased jury. Cf. United States v. Wilkerson, 548 F.2d 970 (D.C.Cir.1976).

THE MOTION TO SUPPRESS

(ASSIGNMENT OF ERROR NO. 2)
The defendant moved to suppress his inculpatory statements and admissions made following his arrest on the ground that they resulted from in-custody interrogation conducted after he had invoked his right to counsel and that his statements were not free and voluntary but were made under the influence of amphetamines. After a hearing, the trial court found that, upon the defendant's arrest, he was fully advised of his constitutional rights and placed in the sheriff's automobile; that he made statements to the sheriff which may have been self-incriminating while they were enroute to the courthouse; that after making the statements the defendant requested the presence of an attorney; that the sheriff did not question the defendant further after this request; that the defendant was questioned while in custody by two of the sheriff's officers after he reached the courthouse; and, that defendant was capable of making a voluntary confession despite the effects of the amphetamines he had taken that day. These findings were in conflict with portions of the defendant's testimony in which he said he requested an attorney almost immediately after his arrest. Nevertheless, from our review of the record, we find that the trial court's findings of fact are adequately supported by the testimony of the sheriff and other witnesses.
The United States Supreme Court in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), set forth procedures to insure that an individual subject to custodial police interrogation is accorded his privilege under the Fifth Amendment not to be compelled to incriminate himself. These included the following: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.[2] Unless other fully effective measures are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be informed that he has a right to remain silent, that any statement he does make may be used in evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.
*561 "If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." Id. 384 U.S. at 444, 86 S.Ct. at 1612. At another point in the opinion, the court declared, "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present." 384 U.S. at 474, 86 S.Ct. at 1627.
Article I § 13 of the 1974 Louisiana Constitution requires that any person arrested or detained in connection with the investigation or commission of any offense must be advised fully of the reasons for his arrest or detention, his right to remain silent, his right against self-incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel. By the adoption of this provision, Louisiana enhanced and incorporated the prophylactic rules of Miranda v. Arizona. In re Dino, 359 So.2d 586 (La.1978).
In Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the high court made clear that when an accused has invoked his right under Miranda to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. An accused, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police. Ibid.[3]
Six months before the decision in Edwards v. Arizona, this court, in State v. Thucos, 390 So.2d 1281, (La.1980), reached a similar conclusion. In that case we held that after an accused invoked his right to have counsel present during custodial interrogation, the police failed in their duty to scrupulously honor his right when they initiated further questioning shortly after his request for counsel. The accused did not have an attorney present although he had not withdrawn his request for one.
The general rule is that, on trial of a motion to suppress, the burden of proof is on the defendant to prove the grounds of his motion. La.C.Cr.P. art. 703(D). One exception to the rule is that the State has the burden of proving beyond a reasonable doubt the voluntariness of a confession which the defendant has moved to suppress as evidence at the trial on the merits. La. C.Cr.P. art. 703(D); La.R.S. 15:451; State v. Glover, 343 So.2d 118 (La.1977); State v. Johnson, 363 So.2d 684 (La.1978); State v. Bouffanie, 364 So.2d 971 (La.1978); State v. Volk, 369 So.2d 128 (La.1979); State v. Jones, 376 So.2d 125 (La.1979). In reviewing the trial judge's ruling as to the admissibility of a confession, his conclusions on credibility are entitled to the respect due those made by one who saw the witnesses and heard them testify. State v. Bouffanie, supra.
Applying these precepts to the facts found by the trial court, we conclude that any inculpatory statements made by the defendant to the sheriff in the automobile enroute to the courthouse occurred after defendant had been advised of his constitutional rights and had voluntarily, knowingly, and intelligently waived them in compliance with Miranda, but before he had invoked his right under Miranda to have counsel present during custodial interrogation. From our review of the record we conclude that the trial judge did not err in finding that the State had sustained its burden of proving beyond a reasonable doubt that the defendant's inculpatory statements were free and voluntary. Accordingly, the statements defendant made *562 to the sheriff in the automobile are not inadmissible because of lack of voluntariness or due to defendant's later invocation of his right to counsel. Since the evidence shows that the defendant did not initiate the further communications, exchanges or conversations with the police at the courthouse, however, the statements defendant made at the courthouse are inadmissible because the State failed to establish a valid waiver of defendant's right to have counsel present during custodial interrogation as he had requested. See, Edwards v. Arizona, supra; State v. Thucos, supra.
By way of supplemental brief in this court, the defendant asserts that all of the inculpatory statements should be suppressed because they resulted from an arrest for which probable cause did not exist. This allegation was made by defendant in his "Motion to Suppress Oral Confession" but was never addressed by the trial court.
In State v. Scott, 355 So.2d 231 (La.1977), this court stated:
"When the defendant challenges the admissibility of a confession on the ground that it was the result of an arrest made without probable cause, `the burden of showing admissibility rests ... on the prosecution.' Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). This affirmative showing must be made by establishing that probable cause existed to arrest the defendant, or, if the arrest was unlawful, by showing that the causal connection between it and the subsequently obtained confession was so attenuated that the confession could not properly be considered as a fruit of the illegal arrest. Wong Sun v. United States [371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441], supra. See, State v. Jenkins, 340 So.2d 157 (La.1976)."
On this record, we cannot conclude that the state met the requirement that it prove either probable cause for the defendant's arrest or a break in causal connexity between the arrest and the confession. Rather than decide those matters for the first time at this level, we think it preferable to allow the trial court to reconsider the motion to suppress under the guidelines expressed in State v. Scott, supra.

Decree
For the reasons assigned, the ruling of the trial court on the motion for change of venue is vacated, with instructions to defer ruling thereon until after voir dire. The ruling on the motion to suppress inculpatory statements is vacated and remanded for further proceedings in accordance with this opinion.
RULINGS ON MOTIONS VACATED; REMANDED.
LEMMON and MARCUS, JJ., concur and assign reasons.
MARCUS, Justice (concurring).
On the facts of this case, I concur in the suppression of the statements made by defendant at the courthouse. A valid waiver of the previously-invoked right to counsel cannot be established by showing only that the accused responded to further police-initiated custodial interrogation after being readvised of his rights. Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Accordingly, the state did not carry its burden of proof.
LEMMON, Justice, concurring.
Although I believe that Edwards v. Arizona, above, should not be applied retroactively, I agree that defendant's request for counsel was not "scrupulously honored". See Michigan v. Moseley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). Therefore, any statements after this request for counsel must be excluded.
NOTES
[1] A number of factors must be considered in determining whether to change venue. As this court noted in State v. Bell,

Some relevant factors in determining whether to change venue are (1) the nature of pretrial publicity and the particular degree to which it has circulated in the community, (2) the connection of government officials with the release of the publicity, (3) the length of time between the dissemination of the publicity and the trial, (4) the severity and notoriety of the offense, (5) the area from which the jury is to be drawn, (6) other events occurring in the community which either affect or reflect the attitude of the community or individual jurors toward the defendant, and (7) any factors likely to affect the candor and veracity of the prospective jurors on voir dire. See, generally, Annotation, 33 A.L.R.3d 17 (1970).
Other factors we have indicated are relevant to this inquiry include:
"* * * The degree to which the publicity has circulated in areas to which venue could be changed, the care exercised and the ease encountered in the selection of the jury, the familiarity with the publicity complained of and its resultant effect, if any, upon the prospective jurors or the trial jurors, and the peremptory challenges for cause exercised by the defendant in the selection of a jury. See, generally, Annotation, 33 A.L.R.3d 17 (1970)."
State v. Bell, 346 So.2d 1090 (La.1977); State v. Berry, 329 So.2d 728 (La.1976).
[2] By custodial interrogation the Supreme Court meant questioning initiated by law enforcement officials after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. Miranda v. Arizona, 384 U.S. at 444, 86 S.Ct. at 1612; State v. Menne, 380 So.2d 14 (La. 1980).
[3] Edwards was decided on May 18, 1981. The trial of the case before us has not yet commenced. We need not decide, therefore, whether Edwards v. Arizona should be given retroactive application. Cf., Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) (Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) held to apply only to cases where the trials have commenced after the decisions were announced).