437 So.2d 264 (1983)
STATE of Louisiana
v.
Donald Earl MITCHELL.
No. 82-KA-1557.
Supreme Court of Louisiana.
September 2, 1983.
*265 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., Nancy F. Gilliland, Michael J. Fontenot, Asst. Dist. Attys., for plaintiff-appellee.
Edward R. Greenlee, Monroe, for defendant-appellant.
BLANCHE, Justice.
Defendant Donald Mitchell was convicted of second degree murder for the shooting death of his estranged wife and sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. See LSA-R.S. 14:30.1. In urging reversal of his conviction, the defendant assigns five errors.
On February 6, 1981, about two hours before the fatal incident, the defendant persuaded his brother to purchase from a Monroe, Louisiana pawn broker a .22 caliber pistol and cartridges. The defendant loaded the gun and left it on the kitchen table at his mother's house, then left to pick up his wife from the Burger King where she worked. On the drive back to the residence, the two argued over the defendant's alleged involvement with another woman. Inside the house, the argument continued, and the defendant seized the pistol and shot his wife twice in the head.[1] About two *266 hours later, the defendant was stopped for traffic violations in Dermott, Arkansas. Subsequently, police learned that the defendant was wanted in Louisiana for the killing of his wife, and he was returned to Monroe later that night. The defendant asserted at trial that he had shot his wife in self-defense when she advanced on him with a knife.

ASSIGNMENTS OF ERROR NOS. 1, 2, 4
By these assignments, the defendant argues that the trial court erred in refusing to suppress certain inculpatory statements taken in violation of his Miranda rights. He also urges that the state failed to disclose, in response to his discovery motion, the content of one of the statements which it introduced at trial.
At about 4:30 p.m. on the day of the murder, the defendant's vehicle was stopped by Dermott, Arkansas Police Chief Jerry Melton after Melton had received a radio bulletin that Montrose, Arkansas police officers were in pursuit of the defendant's vehicle. Melton ordered the defendant out of the car, and the defendant surrendered reluctantly as he exited the vehicle with a whiskey bottle in hand. As Melton handcuffed the defendant, he noticed dried blood on the defendant's head, neck, and back. Melton asked, "What happened?" to which the defendant replied, "My wife shot me." Melton then asked the defendant whether he had also shot his wife, to which the defendant replied, "Yeah." When asked where he had last seen his wife, the defendant responded that he had last seen her "lying on the kitchen floor coughing."
Thereafter, Melton transported the defendant to the Dermott police station where he was advised of his Miranda rights. At the station, Melton learned from the Monroe police department that the defendant had shot and killed his wife and fled the state. Following the Miranda warning, at which time the defendant acknowledged that he understood his rights, Melton interrogated the defendant as to the events which had transpired in Monroe. The defendant again asserted that he had shot his wife twice after she had shot him.
In our opinion, the questioning of Officer Melton prior to the Miranda warnings did not constitute custodial interrogation within the meaning of Miranda. Melton was fully justified in asking the defendant "what happened?" when he saw blood on the defendant's head, neck and back. Melton could not have reasonably been expected to ignore the possibility that the defendant was seriously wounded and in need of medical treatment. Moreover, Melton was justified in questioning the defendant, pursuant to his right to investigate the apparent criminal activities of the defendant, as to whether he had shot anyone else (such as his wife) and as to the potential whereabouts of any other injured persons should they be nearby and in need of medical treatment. Melton knew of no facts which would have implicated the defendant in a shooting in Monroe; indeed, Melton could not have known, absent further investigation, that the defendant had been engaged in some altercation unrelated to the traffic violations for which he was under custody. Where no finger of suspicion has been pointed at a defendant and where he is not the focus of an investigation of a particular crime, we are unwilling to curtail the ability of the police to investigate potential criminal activity. Such a ruling would require that the police administer Miranda warnings to all persons whom they question as to potential breaches of the law, even where the officers are in the preliminary investigatory process of determining whether any crime has indeed been committed. See State v. White, 399 So.2d 172 (La.1981); cf. State v. Thompson, 399 So.2d 1161 (La.1981); State v. Ordonez, 395 So.2d 778 (La.1981); State v. Green, 390 So.2d 1253 (La.1980); State v. Rogers, 324 So.2d 403 (La.1975).
*267 Even if we were to rule that these statements had been taken in violation of Miranda, we are of the view that the admission of these statements was harmless beyond a reasonable doubt. cf. State v. Gibson, 391 So.2d 421 (La.1980). Introduction of an otherwise inadmissible statement may constitute harmless error if accompanied by the introduction of statements free of constitutional taint and of equal or greater inculpatory cast. Null v. Wainwright, 508 F.2d 340 (5th Cir.), cert. denied, 429 U.S. 970, 95 S.Ct. 1964, 44 L.Ed.2d 459 (1975); State v. Redic, 392 So.2d 451 (La.1980); State v. Jones, 386 So.2d 1363 (La.1980).
The statements obtained by Melton at the Dermott station are equally as inculpatory as the prior statements and free of any constitutional taint. The record amply demonstrates that the defendant was adequately informed of his rights at the station house and freely and voluntarily reiterated the facts he had told Melton at the time of his arrest.
Moreover, other statements free of constitutional taint and of equal or greater inculpatory cast were obtained by two Monroe police officers who transported the defendant from Dermott to Monroe. A short distance out of Dermott, the defendant began to chatter nervously about the incident. One of the officers immediately stopped the defendant from talking and again warned him of his Miranda rights. Pursuant to no questioning from the officers, the defendant, in a rambling narrative, again recounted how he had shot his wife twice in the head. However, he changed the story slightly from his two earlier versions and told the officers that he had shot himself.[2]
The defendant has also advanced the argument that all of these statements should have been suppressed because his state of intoxication vitiated the voluntariness of the statements. He also asserts that his head wound contributed to his weakened defenses against suggestive interrogation.
The burden is upon the state to show affirmatively that the statements were given freely and voluntarily and not under the influence of fear, duress, intimidation, menace, threats, inducements, or promises. LSA-R.S. 15:451; State v. Jackson, 414 So.2d 310 (La.1982). The admissibility of an inculpatory statement is a question of fact for the trial judge, and his rulings as to the credibility of witnesses on the issue are not to be overturned unless unsupported by the evidence. State v. Rodrigue, 409 So.2d 556 (La.1982); State v. Dewey, 408 So.2d 1255 (La.1982). Intoxication and a weakened physical condition due to injury are factors to be weighed by the trial judge in assessing voluntariness cf. State v. Smith, 409 So.2d 271 (La.1982); State v. Meredith, 400 So.2d 580 (La.1981). Intoxication will render an inculpatory statement inadmissible only where the intoxication is of such a degree that the defendant's ability to comprehend the consequences of his statement has been negated. State v. Smith, 407 So.2d 652 (La.1981); State v. Robinson, 384 So.2d 332 (La.1980).
In our view, the trial judge analyzed properly the totality of the circumstances in this case and properly determined that the defendant's statements were given freely and voluntarily, in spite of his state of intoxication and head wound. cf. State v. Edwards, 434 So.2d 395 (La.1983).
Officer Melton testified that he had occasion to deal with many intoxicated drivers during his years in law enforcement and stated that the defendant did not appear so intoxicated or disoriented due to his superficial head wound that he could not appreciate the consequences of his actions. Melton testified that the defendant appeared to understand his Miranda rights and executed the rights form acknowledging that his rights had been explained to him. Furthermore, the two Monroe police officers also testified that the defendant did not appear to be so intoxicated or disoriented that he failed to understand his Miranda rights. *268 They testified that the defendant actually seemed anxious to talk about the incident. Given the substantial support in the record for the conclusions of the trial judge, we agree that the defendant's state of intoxication and physical condition due to his head wound did not vitiate the voluntariness of his inculpatory statements.
Finally, the defendant argues in brief that he was taken by surprise by the differences in the testimony of the two Monroe police officers and the testimony of Officer Melton, i.e., the defendant told the Monroe officers that he had shot himself, while earlier he had told Melton that his wife had shot him.
La.C.Cr.P. art. 768 requires only that the state notify the defendant of the existence of any inculpatory statements which it intends to introduce into evidence at trial. Our review of the record shows that defense counsel was indeed notified, in compliance with art. 768, of the existence of the statements made to Officer Melton and the two Monroe officers. Moreover, we fail to see how the defendant was prejudiced by the variance in the two versions. At trial, the trial judge offered defense counsel the opportunity for a continuance if he could give some indication to the court as to what he would have done differently in light of this "new" evidence.[3] Counsel merely asserted "surprise" but could offer nothing to show how he would have prepared for trial differently. Under these circumstances, and since the defendant is not entitled to be informed as to the precise substance of such statements (State v. Quincy, 363 So.2d 647 (La.1978)), we find no error in the ruling of the trial court.
These assignments are without merit.

ASSIGNMENT OF ERROR NO. 3
By this assignment, the defendant argues that the trial court erred in admitting into evidence, through the testimony of neighbor Catherine Harris, the hearsay statements of his brother, Steven Mitchell.
Harris testified that the defendant's brother came to her residence about ten or fifteen minutes after the shooting and told her to call the police because "his sister-in-law had got shot by his brother." The defendant's objection that this testimony constituted inadmissible hearsay was overruled by the trial court, and the testimony was admitted under the res gestae exception to the hearsay rule. LSA-R.S. 15:447, 448.
The res gestae consists of events speaking for themselves under the immediate pressure of the occurrence, through the spontaneous words and acts of the participants. To constitute res gestae, the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction. LSA-R.S. 15:447, 448. Here, the statement made to Harris by Stevens would not constitute part of the res gestae, since the statement was, from the circumstances, too far removed from the event to be considered an excited utterance or spontaneous declaration. Nevertheless, though the statement might be considered hearsay, and therefore inadmissible, our conclusion that defendant's confession was admissible provides a sufficient evidentiary basis upon which to base defendant's conviction. Therefore, the admission of Harris' testimony does not constitute reversible error.

ASSIGNMENT OF ERROR NO. 5
By this assignment, the defendant argues that the trial court erred in admitting, through the testimony of Shirley Harris, evidence of a previous beating the defendant administered to his wife. Specifically, he urges that the evidence was merely cumulative and therefore prejudicial, and furthermore, that the witness could not remember the date of the beating.
Shirley Harris was called by the state to rebut the defendant's assertion on cross-examination that he had beaten his *269 wife only once just a week or so prior to the shooting. At the time of defendant's testimony, counsel entered no contemporaneous objection. Harris testified as to a beating other than the one the defendant admitted to. Since this testimony concerned a different beating, we fail to see how it could have been cumulative. Furthermore, a witness may testify as to any facts within his or her knowledge and need not pinpoint a specific date as to when the facts occurred. See LSA-R.S. 15:463. Failure to specify an exact date would be a matter affecting the weight to be accorded the testimony rather than its admissibility.
This assignment is without merit.

DECREE
The conviction of the defendant, Donald Mitchell, is affirmed.
DENNIS and LEMMON, JJ., concur.
NOTES
[1] Defendant himself was wounded superficially by a bullet which hit him in the back of the head, apparently as a result of a suicide attempt after killing his wife, according to the testimony of the defendant's brother. There is also some suggestion in the record that the defendant intentionally grazed himself with a bullet to establish a claim that his wife had tried to kill him. However, the defendant testified at trial that he had been wounded by a ricochet after firing a third shot into the ceiling.
[2] At trial, the defendant acknowledged that the two officers had stopped him from talking and warned him of his Miranda rights. However, he asserted that he had told them only that he had shot his wife and nothing more.
[3] There are strong indications in the record that counsel knew of the substantive differences in the statements, albeit slight, through pre-trial conversations with the prosecutor.