452 So.2d 1250 (1984)
STATE of Louisiana, Appellee,
v.
Jackie R. JACKSON, Appellant.
No. 16223-KA.
Court of Appeal of Louisiana, Second Circuit.
June 6, 1984.
Rehearing Denied July 6, 1984.
Writ Denied September 28, 1984.
*1252 Donald R. Minor, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., Scott J. Crichton, John A. Broadwell, Asst. Dist. Attys., Shreveport, for appellee.
Before HALL, FRED W. JONES, Jr., and SEXTON, JJ.
HALL, Judge.
The defendant, Jackie R. Jackson, appeals her conviction of Negligent Homicide, LSA-R.S. 14:32. The defendant was found guilty as charged by a unanimous verdict of a six-person jury. The trial court ordered a pre-sentence investigation and after the defendant's sentencing hearing, sentenced the defendant to three years at hard labor with the Department of Corrections.
FACTS:
In the early morning hours of October 19, 1982, at approximately 12:30 a.m., Michael Middleton, a Caddo Parish Sheriff's Deputy, and two other deputies observed a black Chevrolet Camaro, traveling south on Mansfield Road at a high rate of speed, run a red light. The Camaro was traveling at such a rate of speed that it was not possible for the deputy to attempt to pursue the vehicle. At approximately 1:10 a.m. that same morning, Middleton and his partner received a call of an accident some 5-8 *1253 miles from where they were positioned on Mansfield Road.
Deputy Middleton proceeded to the accident scene on the Old Mansfield Road in the Keithville vicinity of Caddo Parish. The accident occurred when the Camaro failed to negotiate a curve on the Old Mansfield Road just past the Keithville/Springridge Road intersection. The vehicle was southbound and apparently did not turn at the curve, but proceeded straight off the road and came to rest approximately 280 feet from the roadway.
Upon arriving at the scene, the deputies found the body of Marvin Nunley positioned in a ditch some 25 feet from the car. Deputy Middleton testified that Nunley appeared to be dead. Approximately 25-30 feet in back of the car the deputies found Gloria Wagstaff. Deputy Middleton stated that Ms. Wagstaff was not conscious, but she was breathing.
Approximately 5-7 minutes after arriving at the scene, Deputy Middleton was contacted by the defendant, Jackie Jackson. The defendant informed Deputy Middleton that she had been the driver of the black Camaro involved in the accident. Deputy Middleton stated that at that point he stopped questioning the defendant and suggested that her brother transport her to the hospital for treatment of lacerations to her arm.
Upon examination of the car, Deputy Middleton found a 1.3 liter bottle of wine which was half-empty. Blood samples were obtained from the defendant at the hospital which indicated a blood alcohol content of .16 grams.
David Permenter, a Louisiana State Police officer, who is a qualified expert in accident reconstruction, testified that from his study of the present accident, there was no evidence of any kind that the driver of the vehicle which ran off the roadway made any attempt to steer off the curve. Permenter testified that in order for the defendant's vehicle to have landed where it did that night, it would have had to have been going a minimum of 59 miles per hour and a maximum of not more than 86 miles per hour. In his opinion, the vehicle was traveling at a rate of 70 miles per hour when it left the roadway.
ASSIGNMENTS OF ERROR:
(1) The trial court erred in denying defendant's motion to suppress inculpatory statements.
(2) The evidence was insufficient to convince a rational trier of fact of defendant's guilt beyond a reasonable doubt.
(3) The trial court erred in denying defendant's motion for new trial and motion for continuance of the hearing on the motion for new trial because of the absence of an out-of-state witness.
(4) The trial court erred in imposing an excessive sentence.
(5) The trial court erred in relying on invalid convictions in raising bail to an unreasonably high level pending the hearing on the motion for new trial.
Assignment of Error No. 1:
The defendant sought to suppress two statements made by the defendant in which the defendant admitted being the driver of the car. The first statement was made at the scene of the accident without Miranda warnings. The second statement was made some two hours later at LSU Medical Center after the defendant had been given Miranda warnings. The defendant asserts two grounds for suppressing the statements. First, the defendant asserts that her physical condition rendered her unable to understand or comprehend the circumstances which confronted her; and second, that the statements were made without benefit of her Miranda rights.
Miranda warnings are not a prerequisite to the admissibility of statements taken by officers during noncustodial, general, on-the-scene investigations, conducted to determine the facts and circumstances surrounding a possible crime, absent a showing that the investigation has passed the investigatory stage and has focused on the accused. State v. Thompson, 399 So.2d 1161 (La.1981); State v. Weeks, 345 So.2d 26, 28 (La.1977). Miranda warnings *1254 are required only when there has been such a restriction of a person's freedom as to render him in custody or significantly detained. It was that sort of coercive environment to which Miranda by its terms was made applicable and to which it is limited. State v. Thompson, supra; Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).
Clearly, in the present case, the defendant's first statement to the deputies at the scene of the accident was made during a noncustodial investigation. The defendant was not entitled to Miranda warnings at that point. The Supreme Court in State v. Mitchell, 437 So.2d 264 (La.1983) stated that where no finger of suspicion has been pointed at a defendant and where he is not the focus of an investigation of a particular crime, the court is unwilling to curtail the ability of the police to investigate potential criminal activity. The court found that such a ruling would require the police to administer Miranda warnings to all persons they question as to potential breaches of the law, even where the officers are in the preliminary investigatory process of determining whether any crime has indeed been committed.
The defendant additionally asserts that the initial statement and the statement at the hospital were not voluntary because her physical and mental condition remained such that she could not have made a knowing and intelligent waiver of her rights. The burden is upon the State to show affirmatively that the statements were given freely and voluntarily and not under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. LSA-R.S. 15:451; State v. Mitchell, supra; State v. Jackson, 414 So.2d 310 (La.1982). The admissibility of an inculpatory statement is a question of fact for the trial judge, and his rulings as to the credibility of witnesses on the issue are not to be overturned unless unsupported by the evidence. State v. Rodrigue, 409 So.2d 556 (La.1982); State v. Dewey, 408 So.2d 1255 (La.1982). Intoxication and weakened physical condition due to injury are factors to be weighed by the trial judge in assessing voluntariness. State v. Mitchell, supra; State v. Smith, 409 So.2d 271 (La.1982); State v. Meredith, 400 So.2d 580 (La.1981). Intoxication will render an inculpatory statement inadmissible only where the intoxication is of such a degree that the defendant's ability to comprehend the consequences of his statement has been negated. State v. Smith, 407 So.2d 652 (La.1981); State v. Robinson, 384 So.2d 332 (La.1980).
In State v. Edwards, 434 So.2d 395 (La. 1983), the court expressly rejected the argument that an intoxication level beyond that established as presumptive of intoxication for purposes of our DWI laws (LSA-R.S. 32:662) renders an otherwise validly obtained consent per se involuntary or somehow raises the burden of the State beyond a showing that the consent was given freely and voluntarily. The court found that degree of intoxication is but one of the circumstances to which the trial judge must look in assessing the voluntariness of the consent.
At the motion to suppress hearing, three deputies who had contact with the defendant testified. Deputies Abrey Cahn and Michael Middleton were the first deputies to arrive at the scene of the accident.
Deputy Cahn first testified that through his investigation he had discovered that the defendant had crawled to the roadway and flagged down a ride. The defendant then rode approximately 1-2 miles down the Keithville/Springridge Road to her brother's home and called the Sheriff's Office. The deputies were at the scene of the accident before the defendant returned to the scene. Deputy Cahn stated that the defendant arrived at the scene in her brother's pickup truck. He testified that they asked her who the driver of the vehicle was and that the defendant stated that she was the driver. Deputy Cahn stated that they then told her to go with her brother to the hospital to get medical attention.
Deputy Cahn testified that at that point in time, there was no obvious indication of *1255 alcohol consumption by the defendant. Deputy Cahn testified that the defendant's physical appearance indicated that she had bruises and her dress was sloppy and that the defendant was upset.
Deputy Middleton testified at the motion to suppress hearing that the defendant arrived within ten minutes after he and Deputy Cahn arrived at the scene. Deputy Middleton stated that he asked the defendant who was in the vehicle so that he could determine whether there were any other bodies that were undiscovered. The deputy stated that the defendant had a bad cut on her arm which was bleeding badly. He told the defendant and her brother to go the hospital so that the defendant could be treated.
Deputy John Simpkins testified that he followed the ambulance carrying Gloria Wagstaff from the scene to the hospital. He arrived at LSU Medical Center at approximately 2:00 a.m. where he contacted the defendant. He first advised the defendant of her rights, but told her that she was not under arrest at that time. He had the defendant sign a waiver of her Miranda rights form which was filed into evidence. Deputy Simpkins stated that the defendant appeared to understand her rights and that she appeared to be coherent in spite of her physical problems. He stated that he did not do anything to place the defendant under any kind of duress or intimidate her in order to get her to give a statement. Simpkins stated that the defendant indicated that she did not desire to have an attorney present and that she did appear to freely and voluntarily waive her Miranda rights.
Deputy Simpkins stated that the defendant told him that she was coming from the bowling alley on her way to her brother's house on the Keithville/Springridge Road. The defendant stated that they had been out partying and dancing. She indicated that she had been drinking but also stated that she was not drunk. The defendant stated that she could not remember anything but that she just missed her turn and then lost control of the car. Deputy Simpkins then obtained a blood sample from the defendant.
At approximately 6:45 a.m. that morning, the defendant was placed under arrest for negligent homicide. The witnesses indicated that the defendant became hysterical at that point and made no further statements.
Applying the applicable jurisprudence to the facts in the present case, the State established that the statements made by the defendant were given freely and voluntarily. The blood alcohol test did indicate that the defendant was intoxicated; however, none of the witnesses indicated that the defendant was so intoxicated that she did not understand her actions or appeared incoherent. The defendant did not have any apparently severe physical injuries. The witnesses did indicate that the defendant was upset; however, none of the witnesses indicated that the defendant was ever incoherent or hysterical at the times when she made her statements to the deputies. The only time at which the witnesses indicated that the defendant was in fact incoherent or hysterical was at 6:45 a.m. when the defendant was informed of Marvin Nunley's death and of her arrest concerning his death. The State adequately carried its burden of proof.
This assignment of error is without merit.
Assignment of Error No. 2:
By this assignment of error, the defendant asserts that the evidence was insufficient to convince a rational trier of fact of the defendant's guilt beyond a reasonable doubt. However, the defendant has not argued this assignment of error in brief. Assignments of error made but not argued or briefed are considered to be abandoned. State v. Domingue, 298 So.2d 723 (La.1974); State v. Williams, 338 So.2d 672 (La.1976).
Assignment of Error No. 3:
By this assignment of error, the defendant asserts that the trial court erred in denying defendant's motion for new trial *1256 and a motion for continuance of the hearing on the motion for a new trial. The defendant asserted as grounds for her motion for new trial that, notwithstanding the diligent efforts of counsel, newly discovered evidence had been discovered.
On a motion for new trial based upon newly discovered evidence, the defendant has the burden to show that the evidence could not have been discovered before or during trial through the exercise of reasonable diligence. LSA-C.Cr.P. Art. 851(3); State v. Fuller, 414 So.2d 306 (La. 1982); State v. Simms, 410 So.2d 1040 (La.1982). The ruling on a motion for a new trial is committed to the sound discretion of the trial judge and will be disturbed on appeal only when there is a clear showing of an abuse of that discretion. State v. Fuller, supra; State v. Spell, 399 So.2d 551 (La.1981); State v. Manning, 380 So.2d 54 (la.1980).
LSA-C.Cr.P. Art. 854 sets forth the necessary allegations in a motion for new trial on the basis of newly discovered evidence:
"A motion for a new trial based on ground (3) of Article 851 shall contain allegations of fact, sworn to by the defendant or his counsel, showing:
"(1) That notwithstanding the exercise of reasonable diligence by the defendant, the new evidence was not discovered before or during the trial;
"(2) The names of the witnesses who will testify and a concise statement of the newly discovered evidence;
"(3) The facts which the witnesses or evidence will establish; and
"(4) That the witnesses or evidence are not beyond the process of the court, or are otherwise available.
"The newly discovered whereabouts or residence of a witness do not constitute newly discovered evidence."
The defendant asserts in her motion for new trial that she recently discovered that Gloria Wagstaff will testify that she now remembers that the defendant was not driving the automobile which was involved in the accident causing the death of Marvin Nunley.
On June 28, 1983, a hearing was held on defendant's motion for new trial. Jo Eileen Wagstaff, Gloria's mother, testified concerning Gloria's condition and availability. Mrs. Wagstaff stated that Gloria and she live at Jouquin, Texas. Mrs. Wagstaff testified that Gloria was involved in the accident in Caddo Parish on October 19, 1982 and that Gloria was receiving treatment for her injuries at the Brown Treatment Center in Austin, Texas. Mrs. Wagstaff testified that on the date of the trial, February 28, 1983, Gloria was at home in a body cast. Mrs. Wagstaff testified that her daughter remembers little or nothing concerning the evening of the accident. Mrs. Wagstaff stated that Gloria indicated to everyone whom she met that she believed the cause of her condition was a skiing accident.
Mrs. Wagstaff stated that the defendant came to see Gloria around the 1st of March after her conviction. Mrs. Wagstaff stated that after the defendant left her home Gloria was very upset and crying and that when she calmed down she again indicated that she could not remember who was driving the car, nor anything else concerning that evening. At the conclusion of the hearing on June 28, 1983, the trial court granted the defendant a continuance.
On July 25, 1983, another hearing was held on defendant's motion for new trial. Defense counsel stated to the court that he had correspondence he received from the sheriff of Travis County, Texas where he had attempted to have an out-of-state subpoena served on Gloria Wagstaff. No hearing had yet been held in Travis County, Texas concerning his out-of-state subpoena and the clerk of Travis County had notified defendant that a hearing is required under Texas law to determine whether the subpoena should issue. The trial court then granted the defendant an additional continuance on his motion for a new trial.
On August 10, 1983, defense counsel informed the court that a hearing had been *1257 held in the State of Texas and that the judge declined to order Gloria Wagstaff to appear in this state. Defense counsel asked the court for additional time in which to obtain Gloria Wagstaff's presence. The trial court denied defendant's motion for continuance and then pursuant to LSA-C. Cr.P. Art. 854(4) denied defendant's motion for new trial.
Art. 854(4) provides that a motion for a new trial based upon Art. 851(3) shall contain allegations of fact including that the witnesses or evidence are not beyond the process of the court or are otherwise available. The record reflects that Gloria Wagstaff is beyond the process of the First Judicial District Court. Additionally, the testimony adduced at the defendant's motion for new trial indicates that there is a strong probability that Gloria Wagstaff would never be physically or mentally able to testify in Caddo Parish concerning the accident in question.
The defendant additionally asserted that the trial court should have granted him another continuance. LSA-C.Cr.P. Art. 709 sets forth the factors to be considered in a motion for continuance based upon the absence of a witness:
"A motion for a continuance based upon the absence of a witness must state:
"(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
"(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
"(3) Facts showing due diligence used in an effort to procure attendance of the witness."
The defendant has failed to assert facts or circumstances that show a probability that the witness will be available at any future time. Therefore, the trial court correctly denied the defendant a continuance.
This assignment of error is without merit.
Assignment of Error No. 4:
By this assignment of error, the defendant asserts that the trial court erred in imposing an excessive sentence.
It is well-settled that the sentencing judge is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing judge. State v. Square, 433 So.2d 104 (La.1983); State v. Brooks, 431 So.2d 865 (La.App. 2d Cir.1983); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir. 1983), writ denied 439 So.2d 1074 (La.1983).
The sentencing guidelines of LSA-C.Cr.P. Art. 894.1 provide the criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983). While the trial judge need not articulate every aggravating and mitigating circumstance outlined in Art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. State v. Hammonds, supra; State v. Cunningham, 431 So.2d 854 (La. App. 2d Cir.1983); State v. Smith, 433 So.2d 688 (La.1983).
A sentence is constitutionally excessive in violation of Louisiana Constitution of 1974 Art. 1, § 20 if the sentence is grossly out of proportion to the severity of the offense or nothing more than a needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, supra.
In particularizing the sentence to the defendant, the trial court noted that the defendant was intoxicated while returning home and was driving at a high rate of speed when she lost control of her vehicle. The court noted that the accident resulted in the death of Marvin Nunley and the serious and permanent injury of Gloria Wagstaff. In considering the guidelines of *1258 LSA-C.Cr.P. Art. 894.1, the court noted that it was apparent that the defendant's criminal conduct caused serious harm. The court found no grounds tending to excuse or justify her conduct. The court noted that the defendant has a history of driving in a negligent manner. In particular, the court noted that the defendant was arrested in 1981 for DWI, which charge was reduced to Careless and Reckless Driving. Again, in 1982, the defendant was arrested for DWI, which charge was again reduced to C & R. The defendant had numerous other traffic offenses. The trial court also noted that the pre-sentence investigation report indicated that the defendant had previously been given the opportunity to control her drug and alcohol problem by admission to the Pines Treatment Center. However, the defendant did not continue with the program and departed against medical advice. The court noted the defendant's significant prior criminal record which revealed numerous prior offenses and at least two offenses which involved drinking and driving. The court found that there appeared to be no alternative to incarceration because fines and probation had not been sufficient to deter defendant from the commission of other offenses as shown by this conviction. The court found that the defendant was in need of correctional treatment in a custodial environment and that she must be committed to serve a term of imprisonment. The court found that any lesser sentence would deprecate the serious nature of the crime where life was taken and another person seriously injured.
The record of the sentencing hearing reflects that the trial court adequately complied with the guidelines set forth in LSA-C.Cr.P. Art. 894.1.
A review of the record in the present case also reflects that the defendant's sentence was not grossly out of proportion to the severity of the crime. The defendant had numerous traffic offenses including offenses involving drinking and driving. It appears that the defendant's probationary sentences for her previous convictions did not deter her from the present crime. The term of imprisonment imposed was justified.
This assignment of error is without merit.
Assignment of Error No. 5:
In this assignment of error, the defendant contends the trial court erred in relying on invalid convictions in raising bail to an unreasonably high level pending the hearing on the motion for new trial. However, the defendant has not urged this assignment before this court in argument or brief. Consequently, we consider it abandoned. State v. Domingue, supra; State v. Williams, supra.
Decree
The defendant's conviction and sentence are affirmed.
Affirmed.