KLEES, Judge.
This is an appeal by Betty J. Broaden from a conviction of second degree murder in violation of LSA-R.S. 14:30.1. The issues presented on appeal are: (1) Whether the trial judge erred in denying the defend *401 ant’s motion to suppress certain inculpato-ry statements; and (2) Whether the State proved beyond a reasonable doubt that the murder was not committed in self-defense. We find that the trial judge was correct in allowing the inculpatory statements in as evidence and furthermore, that the State met its burden of proof on the self-defense issue. We therefore affirm the conviction and sentence.
FACTS
On August 25, 1983, at about 10:15 a.m., Officer John Duzac received a call that a person required medical assistance at 5381/2 Fourth Street, the defendant’s apartment. Upon entering this address, the officer observed a partially-clothed male lying dead on the floor near the bed. The victim had sustained a wound to the left side of his head. There was a large amount of blood on the floor under the body, as well as on the mattress and box spring. There were no blood stains outside the apartment. The victim’s clothes were neatly folded on the bed. These facts were testified to by Officer Duzac and Detective Marco Demma, who arrived at the scene somewhat later.
The officers spoke with the defendant, who told them that the victim, a friend of hers, had knocked on her door at 6:00 a.m. complaining of a head injury, had stumbled inside bleeding and holding his head, and had fallen onto the floor unconscious. She knew the victim as “Lawrence”. The defendant stated that she had attempted to assist the victim, but had become scared when the bleeding failed to stop. She left the apartment about 9:00 a.m. to seek help. According to the defendant, she first walked to her place of employment, a construction site, and informed her supervisor that she would not be in to work that day. She then sought help from an acquaintance, Don Williams, whom she met on the street after leaving her jobsite. Mr. Williams accompanied the defendant back to her apartment, where they called the police.
After their investigation of the scene was completed, the officers asked the defendant to accompany them to the police station to give a written statement, and she agreed. Enroute to the station, they passed the, defendant’s jobsite and she pointed it out, stating that she had spoken with her supervisor that morning. They stopped, and one of the police officers got out of the car and went to locate the defendant’s supervisor, Mr. Dean Lilly. Mr. Lilly informed the officer that he had indeed spoken with the defendant that morning, and that the defendant had told him she had killed someone and needed her check. After Mr. Lilly told her it would take awhile to get her check, the defendant had left, saying she would return later.
After speaking with Mr. Lilly, the officers continued transporting the defendant to the police station, where they learned the results of the coroner’s autopsy, which showed that the victim had sustained a gunshot wound to the head. At this point the defendant was advised of her rights and arrested. After signing a written waiver of her right to counsel, the defendant gave a typewritten statement in which she admitted to shooting the victim. Later that day, the weapon was found under the sofa at the apartment of Don Williams.
At the trial, the defendant testified and gave a similar rendition of the facts as in her written statement, which was read in open court. She claimed that Lawrence Jefferson, whom she had met a month before, came to her door between 7:30 and 9:30 p.m. on August 24th, and she let him in. Mr. Jefferson was drinking, and he proceeded to sexually harass and threaten the defendant throughout the night. Twice during the night the defendant got up from the bed where Lawrence Jefferson had made her lie with him and, without his knowledge, retrieved his gun from his pants pocket. After loading the gun in the bathroom, the defendant wrapped it in a rug and got back into bed, placing the gun next to her on the floor. Then, when Mr. Jefferson rolled over and “straddled” her, the defendant picked up the gun and shot him in the head. The defendant claimed that she shot Lawrence Jefferson “out of *402 fear,” although she admitted that she never tried to escape or run to her neighbor’s apartment, which could be accessed through the bathroom. Contrary to the testimony of her neighbor, Billy Jones, the defendant testified that Lawrence Jefferson had never been in her apartment before that night.
Dr. Paul McGarry, a pathologist, testified that the wound which killed the victim had resulted from the firing of a gun that was pressed against the victim’s head. The doctor further testified that the bullet moved in a downward direction, although the defendant had stated she was lying underneath the victim, who was kneeling over her when she shot him. Finally, the doctor stated that after receiving a wound of this type, the victim would have been unconscious and unable to walk or talk.
The jury found the defendant guilty of second degree murder, and she was sentenced to serve the rest of her natural life at hard labor without benefit of parole, probation, or suspension of sentence. This appeal follows from that conviction and sentence.
A. Errors Patent
A review of the record indicates there are no errors patent.
B. Use of Inculpatory Statements
The defendant contends that the trial court erred in denying the motion to suppress the oral statements she made to the officers in her apartment. Defendant contends that these inculpatory statements were taken in violation of her rights under Miranda v. Arizona and LSA-C.Cr.P. art. 218.1.
Here, Officers Duzak and Varusso responded to a medical call at the defendant’s apartment. When they saw the victim lying on the floor, they asked the defendant “What happened?”. Duzak, Varusso and Detective Marco Demma testified that the defendant was not under investigation at this time nor was she considered a suspect. The officers were merely trying to determine the nature of the medical call.
LSA-C.Cr.P. art. 218.1 provides:
When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel.
The factors to be considered when determining whether a suspect has been detained in any significant way so as to trigger Miranda warnings were enunciated in State v. Thompson, 399 So.2d 1161, 1165 (La.1981):
Factors relevant to the determination include (1) whether the police officer had reasonable cause under C.Cr.P. 213(3) to arrest the interrogee without a warrant; (2) the focus of the investigation on the interrogee; (3) the intent of the police officer, determined subjectively; and (4) the belief of the interrogee that he was being detained, determined objectively.
Here, there was no reasonable cause to arrest Ms. Broaden at the time the statements were given. In fact, there was no criminal investigation underway, as the officers were not aware that a crime had been committed. The officers testified that they would have detained the defendant if she had attempted to leave; however, she did not do so. Also, the “questioning” occurred in her apartment, and, determined objectively, it does not appear that the defendant would have believed she was being detained. The Louisiana Supreme Court has stated:
Where no finger of suspicion has been pointed at a defendant and where he is not the focus of an investigation of a particular crime, we are unwilling to curtail the ability of the police to investigate potential criminal activity. Such a ruling would require that the police administer Miranda warnings to all persons whom they question as to potential breaches of the law, even where the officers are in *403 the preliminary investigatory process of determining whether any crime has indeed been committed.
State v. Mitchell, 437 So.2d 264, 266 (La.1983).
Moreover, the admissibility of an in-culpatory statement is a question of fact for the trial judge, and his rulings as to the credibility of witnesses on this issue are not to be overturned on appeal unless unsupported by the evidence. State v. Mitchell, supra at 267; State v. Rodrigue, 409 So.2d 556, 561 (La.1982).

C. Sufficiency of Evidence

The defendant was convicted of second degree murder, defined in LSA-R.S. 14:30.1 as “the killing of a human being ... when the offender has a specific intent to kill or inflict great bodily harm.”
The defendant contends that the trial court should have granted her motion for judgment of acquittal notwithstanding the verdict because the evidence presented at trial failed to prove beyond a reasonable doubt that the killing was not committed in self-defense. The standard for determining the sufficiency of evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. State v. Wright, 445 So.2d 1198, 1201 (La.1984).
The evidence, when viewed in the light most favorable to the prosecution, established that Ms. Broaden was verbally and physically abused by the victim the evening before the shooting. However, it does not appear that she was in any danger when she loaded the weapon, wrapped it in a rug, put it against the victim’s head and “gave one quick shot.” Ms. Broaden told police that she shot the defendant “out of fear ... because he had told me that he was going to come back with a shotgun.” The defendant may have feared the victim but she had ample opportunities to escape or call for help. She was not in imminent danger of losing her life, particularly when she possessed the weapon and ammunition, and the defendant was sleeping.
Although there is no absolute duty to retreat before defending oneself, the possibility of escape is relevant in determining the defendant’s reasonable belief that deadly force was necessary to avoid danger. State v. Collins, 306 So.2d 662, 663 (La.1975). In this case the jury evidently concluded that the defendant did not reasonably believe herself in such danger to justify the use of deadly force. See, e.g., State v. Brown, 414 So.2d 726, 728-730 (La.1982). We find that the evidence was sufficient to support the jury’s conclusion.
Accordingly, for the reasons expressed above, the conviction and sentence are hereby affirmed.