ARMSTRONG, Judge.
Appellant, Arthur Lee, was charged with and convicted of a violation of LSA-R.S. 14:69, relative to the offense of receiving stolen things valued at $9,000. He was sentenced as a multiple offender to serve ten years at hard labor. On appeal, appellant argues that the Trial Court erred in denying his motion to suppress confession and in imposing an unconstitutionally severe sentence.
The record reflects that at approximately 8:00 a.m. on March 20, 1982, Officer John Bryson responded to a “traffic accident with injuries” call. Upon arriving at the scene of the accident, the officer observed a large white van marked “Tonti” rammed into a telephone pole. Another car was located in the intersection and was almost totally demolished. Appellant, Arthur Lee, was standing beside the van and was bleeding from a laceration on the rear part of his head. The officer asked Lee if he was driving the van and Lee responded “yes.” There was an indentation in the van’s windshield on the driver’s side. The officer checked the driver of the other vehicle for injuries. Finding none serious, the officer returned to aid the defendant who said that there was another person in the van. Defendant gave the keys to the van to the officer. The officer opened the rear of the van to look for another person but found no one. As the officer was inside the van, Lee began to walk away toward the crowd which had gathered following the accident. The officer spotted defendant, grabbed his arm and took him to the police vehicle. The defendant again asked about another person in the van. The officer’s suspicions were aroused.
At the scene, the driver of the other vehicle could not say with certainty who was driving the van, and Officer Bryson got conflicting information from two bystanders as to how many people had been in the van. Neither bystander testified at trial.
Officer Bryson knew the owner of the van to be Bob Tonti because he had worked for Tonti Management Corporation. The officer told Lee that Bob Tonti was going to be angry about the accident. When the Lee did not recognize the name, the officer’s suspicions were further aroused. At this point the officer arrested him for driving without a license, placed him in the rear seat of the police car, and gave him Miranda warnings from memory. The officer then attempted to check the license plate of the van to see if it had been reported as stolen, but these attempts failed as the police computers were down. The officer continued to talk to Lee, inquiring about the identity of the alleged other occupant of the van. Lee told the officer that one Brian Vincent had given him a ride. The van was impounded at the accident scene.
The officer then brought the appellant to Charity Hospital. While appellant’s injury was being medically treated, the officer *196 contacted an employee of Tonti Management Corporation and learned that the van and other things had been stolen from the home of Mr. and Mrs. Zainey Hall earlier that same morning. Bryson also made several phone calls trying to get more information about Brian Vincent, the individual Lee said had been driving the van. After learning that the van had been stolen in a burglary, the officer placed Lee under arrest for the present charge. At that time, the officer again gave Miranda warnings, this time by reading the rights from a card.
After the arrest at the hospital, the officer searched Lee’s pants’ pockets, finding an LSU pin and two gold chains, one with the initial “G”. A checkbook with the names Zainey and Gloria Hall was found on the dashboard of the van. Bryson testified that when he confronted Lee about these items, Lee did not know who the chains in his pocket or the LSU pin belonged to but claimed that he owned the chains around his neck.
At trial the defense stipulated that Tonti was the owner of the van, that it was worth $9,000.00 and that no one was given permission to remove the van from Mr. Hall’s home on the date of the incident.
Lee testified on his own behalf and related that he did not know how to drive, had no driver’s license and had not been driving the van. He denied giving the officer the keys to the van and claimed that they were in the ignition. Lee further testified that he had been given a ride in the van by Brian Vincent from whom he had purchased the jewelry that was found in his pocket.
In his first assignment of error, appellant argues that the Trial Court erred in denying his motion to suppress all of the statements he made after Officer Bryson had entered the van to search for a second occupant. He further asserts that the Trial Court should have suppressed all evidence derived from said statements.
LSA-R.S. 15:451 provides:
Before what purposes to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises.
Under the provisions of LSA-R.S. 15:449:
The term “admission” is applied to those matters of fact which do not involve criminal intent; the term “confession” is applied only to an admission of guilt, not to an acknowledgement of facts merely tending to establish guilt.
In State v. Andrus, 250 La. 765, 199 So.2d 867 (1967) the Louisiana Supreme Court divided incriminating statements into the following three categories:
... The first is the confession properly speaking, a term which is applied only to an admission of guilt of the crime charged. The second is the admission which involves the existence of criminal intent. The third is the admission or acknowledgement of facts merely tending to establish guilt but not involving the existence of criminal intent.
199 So.2d at 880.
The rules governing the admissibility of confessions are applicable to admissions involving the existence of criminal intent or inculpatory fact. State v. McGraw, 366 So.2d 1278 (La.1978). The Trial Court’s determination of the admissibility of either a confession or admission will not be disturbed on review unless it is not supported by the evidence. State v. Nuccio, 454 So.2d 93 (La.1984). When reviewing the trial court’s determination of admissibility, the reviewing court may look to the totality of the evidence presented at the suppression hearing and at the trial itself. State v. Phillips, 444 So.2d 1196 (La.1984).
In the instant case it is clear that with the exception of Lee’s response of “who?” to Bryson’s reference to Bob Tonti, all of Lee’s statements made prior to his arrest at the hospital for the possession of stolen property were neither confessions nor admissions. Lee’s remarks were exculpatory in nature and were not rendered inculpatory merely by the fact that they *197 contradicted his initial admission that he had been driving the van.
With respect to Lee’s apparent lack of recognition of the name Bob Tonti, Lee’s response was not made as a result of questioning. Lee's response, moreover, came at the time when Officer Bryson was not investigating a particular crime but “was in the preliminary process of determining whether a crime had been committed.” State v. Mitchell, 437 So.2d 264, 266 (La. 1983). Under such circumstances, Officer Bryson was not required to give Lee his Miranda rights prior to talking to him about the owner of the van.
As for the statements Lee made after being arrested for possession of stolen property, Bryson testified that when he first spoke to Lee at the scene of the accident, Lee was a little incoherent and appeared shaken. At the hospital, however, Lee was less dazed and did not appear to be either intoxicated or drugged. Officer Bryson testified that upon arresting Lee at the hospital, he read the Miranda rights in full from a card. The officer testified that the appellant appeared to understand these rights. Bryson also testified that he had read Lee his rights from memory at the time he arrested Lee for driving without a license. Moreover, with the exception of his initial statement to Officer Bryson, Lee’s version of the incident was consistent and relatively detailed. Under the totality of the circumstances, we feel that the Trial Court properly found the statements to be free and voluntary.
In his second assignment of error, appellant maintains that the trial court erred in imposing an excessive sentence. Lee was sentenced as a second offender to serve ten years at hard labor. The maximum sentence for receiving stolen property valued at more than five hundred dollars, when enhanced by a second offender conviction, is twenty years imprisonment. LSA-R.S. 14:69(B); LSA-R.S. 15:529.1 A (1). Thus, appellant received one-half the maximum sentence.
Article 1, Section 20 of the Louisiana Constitution of 1974 provides that “No law shall subject any person ... to cruel, excessive or unusual punishment.” The imposition of a sentence, although within the statutory limit, may still violate this provision and may be reviewed on appeal. State v. Thomas, 447 So.2d 1053 (La.1984); State v. Soco, 441 So.2d 719 (La.1983). A sentence which appears severe is considered excessive and unconstitutional if it is grossly out of proportion to the severity of the crime and is nothing more than the purposeless and needless imposition of pain and suffering. State v. Davis, 449 So.2d 452 (La.1984).
In the present case the Trial Court stated, as its reasons for sentence:
Arthur Lee, you’ve been found guilty of receiving stolen things in the amount of $9,000 by a jury. Prior to this, you pleaded guilty to simple burglary and were sentenced to three years in Department of Corrections, suspended and placed on five years active probation. Before this period of probation was up, you committed the present offense for which you’ve been convicted by jury. The court finds that you are in need of correctional treatment and a custodial environment that could better rehabilitate your. Therefore, the Court sentences you to serve ten years at hard labor in the custody of the Department of Corrections.
While this limited statement does not fully comport with the provisions of LSA-C.Cr.P. art. 894.1, “it is not necessary for every factor in that article to be enumerated.” Thomas, supra at 1056. Additionally, we do not find the sentence imposed to be apparently severe.
For the foregoing reasons, the appellant’s conviction and sentence are affirmed.
AFFIRMED.