JOY COSSICH LOBRANO, JUDGE.
| iThe State charged defendant, Randy T. Alverez, Sr., with one count of aggravated incest[1] upon a thirteen year old female (victim), who had a familial relationship with the defendant. Following a trial, the jury found defendant guilty of attempted aggravated incest, and the trial court sentenced him to six years at hard labor with credit for time served. Defendant appealed. For the reasons that follow, we affirm defendant’s conviction and sentence.
*146 On October 14, 2008, New Orleans Police Department Detective Jounay Ross (Det. Ross) arrived at the victim’s school after being contacted by Mr. Burton, a social worker with the Department of Family and Children Services who was assigned to the school. Det. Ross met with Ms. Allen, who informed him of the allegation made by the victim. Det. Ross also spoke with Ms. Kimberly Ballance, the school’s operations data manager and a friend of the victim’s mother. Shortly thereafter, the victim’s mother arrived at the school, and Det. Ross advised |2her that the victim needed to go to Children’s Hospital for a physical examination and forensic interview. Ms. Joan Verrett, a forensic interviewer with the Children’s Advocacy Center, interviewed the victim, while Det. Ross monitored the interview from a separate viewing area.
After the interview, Det. Ross relocated to the victim’s family home, where she encountered the defendant outside the residence smoking a cigarette. Det. Ross explained her presence, and the defendant gave her permission to enter the residence to take photographs. Det. Ross recalled that the residence had three bedrooms in the rear of the house and a den containing a sofa, computer, baby bed and television. On October 16, 2008, the defendant was arrested and charged with aggravated incest. Det. Ross identified the cassette tape, DVD, VHS tape and drawings from the victim’s forensic interview conducted at the Children’s Advocacy Center.
Ms. Verrett testified that she interviewed the victim at the Children’s Advocacy Center in October of 2008, and that none of the victim’s family members or attorneys was present during the video and audio recorded interview.[2]
Ms. Ballance testified that in October 2008 she encountered the victim crying at school. When Ms. Ballance asked the victim what was wrong, she responded that something inappropriate had happened between her and the defendant. Ms. Bal-lance contacted Mr. Burton, who assumed control of the situation.
DThe victim testified that on October 14, 2008, she was thirteen years old, in the eighth grade at Edward Hynes Charter School, and was living with her family, including the defendant.
On the evening of October 14, 2008, the victim said she had fallen asleep on the sofa in front of the television in the den. On past occasions, the defendant would wake her up and send her,to bed. However, on this particular night, she awoke to see and feel the defendant removing his penis from her mouth. He had a T-shirt on and basketball shorts from which his penis was protruding. She began to cry. She got up, brushed her teeth, and then went to bed. The defendant followed her into her bedroom and pleaded with her not to tell anyone about the incident. If she did, he told her, her younger sister and brother would grow up without a father. She decided not tell anyone what had happened.
The next morning, as the defendant drove the victim to school, he told her not to tell anyone about the previous night. He also told her he would have her phone repaired. At school, she kept thinking about what had happened the night before and was extremely upset. Ms. Ballance noticed that she was crying and asked what was wrong. The victim told Ms. Ballance that the defendant had inappropriate contact with her the night before. Ms. Ballance had the victim speak to the school social worker, who called Child Pro *147 tective Services. When the defendant arrived at school to pick up the victim, the school authorities would not release her to him. The victim’s mother came to school, and brought the victim to Children’s Hospital. The victim underwent a medical exam, spoke to doctors and met with Ms. Verrett.
During the interview, the victim told Ms. Verrett that although her mother was home the night of the incident, she did not tell her what the defendant had |4done. The victim said that the defendant had warned her not to tell her mother because he would get in trouble, and her brother and sister would no longer have a father. The defendant also told her that if her mother and biological father learned of the incident, their relationship would deteriorate.
The State introduced the victim’s medical reports from Children’s Hospital, and documentation proving the required familiar relationship between the victim and defendant.
The defendant testified that in October 2008, he, his wife, their two children and the victim lived together. The defendant explained that on the night of October 13, 2008, he discovered some inappropriate and sexually suggestive text messages on the victim’s cell phone. He did not know who had sent the victim the messages and was concerned that some stranger was arranging to meet the victim at her school. The defendant woke the victim, who had fallen asleep on the sofa, to discuss the text messages. She would not respond to his questions, so he threatened to take her cell phone from her and prevent her from seeing her father on the weekend. The victim became enraged and threatened the defendant that if he did not allow her to see her father, she would tell someone that he (the defendant) had touched her inappropriately. After that, the defendant sent- the victim to bed, and he retired shortly afterwards. The defendant did not tell his wife about the e-mails or the discussion he and the victim had had about them. The next morning, the defendant drove the victim to school. The two did not converse during the trip, but when the victim asked the defendant for her cell phone, he refused to give it to her. The defendant denied putting his penis in the victim’s mouth.
IsDuring cross-examination, the defendant stated that he did not tell his wife or the victim’s father about the text messages he saw on the victim’s phone. However, when the school would not release the victim to him, he mentioned to his wife the discussion he and the victim had the night before and the threat she had made against him. The defendant said he assumed the text messages were somehow connected to a person across the river in the vicinity of the victim’s father’s house. The defendant further denied that the text messages could have been received in error by the victim. He did admit, however, that he did not know whether the messages came from a male, nor did he know the number the messages were sent from. The defendant complained that every time the victim returned from a visit with her father, she was disrespectful and refused to perform her chores.
Mr. Edward Gai testified that he was a private investigator and worked on this case on behalf of the defense. On October 24, 2008, Gai photographed the defendant’s residence, and he retrieved a pair of blue shorts belonging to the defendant. Under cross-examination, Mr. Gai noted that neither the defendant nor his wife turned over a cell phone to him. Gai also admitted that he did not obtain records pertaining to the victim’s cell phone.
A review for errors patent on the face of the record reveals none.
*148 In the first of five assignments, the defendant complains that the evidence is insufficient to support the conviction.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 735 (La.1992).
| (¡When reviewing the sufficiency of the evidence to support a conviction, this court is controlled by the standard set forth by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which dictates that to affirm a conviction “the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.” State v. Captville, 448 So.2d 676, 678 (La.1984). Further, “evidence sufficient to support the charged offense will be deemed to be sufficient to support the responsive verdict where the defendant does not object to the inclusion of the responsive verdict.” State v. Colbert, 2007-0947, p. 13 (La.App. 4 Cir. 7/23/08), 990 So.2d 76, 84-85 (citing State v. Harris, 2002-1589 (La.5/20/03), 846 So.2d 709; and State ex rel. Elaire v. Blackburn, 424 So.2d 246 (La.1982)).
In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness’ testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Robinson, 2002-1869, p. 16 (La.4/14/04), 874 So.2d 66, 79. Under the Jackson standard, the rational credibility determinations of the trier of fact are not to be second guessed by a reviewing court. State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291, 1293. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319, 1324 (La.1992) (citation omitted).
“A fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Where rational triers of fact could disagree as to the interpretation of the evidence, the |7rational trier’s view of all evidence most favorable to the prosecution must be adopted on review. Only irrational decisions to convict by the trier of fact will be overturned.” State v. Winston, 2011-1342, p. 8 (La.App. 4 Cir. 9/12/12), 100 So.3d 332, 337 (internal citations omitted).
In support of his argument that the evidence was insufficient, the defendant argues that the victim’s testimony was uncorroborated, internally inconsistent and irreconcilably conflicted with the physical evidence, i.e., the physical scene where she claimed the incident occurred.
The defendant was charged with aggravated incest but convicted of attempted aggravated incest on the victim on October 14, 2008. Pursuant to La. R.S. 14:78.1, aggravated incest is “the engaging in any prohibited act with a person who is under eighteen years of age and who is known to the offender as being related to the offender.” The prohibited acts include sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles and molestation of a juvenile (La. R.S.14:78.1(B)(1)), as well as “[a]ny lewd fondling or touching of the person of either the child or the offender, done or submitted with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.” La. R.S. 14:78.1(B)(2).
Sexual battery is defined by La. R.S. 14:43.1(A) as “the intentional touching of *149 the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim, when any of the following occur: (l)[t]he offender acts without the consent of the victim.”
IsA lewd or lascivious act is one which tends to excite lust and to deprave the morals with respect to sexual relations and which is obscene, indecent, and related to sexual impurity or incontinence carried on in a wanton manner. State v. Holstead, 354 So.2d 493, 497-98 (La.1977).
La. R.S. 14:27, Louisiana’s attempt statute, provides in pertinent part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
The trial testimony indicated that on October 14, 2008, the victim was thirteen years of age and had the required familial relationship with the defendant, as verified by documentation. Further, the record reflects that the defendant committed a lewd and lascivious act on the victim with the intention of arousing or gratifying his sexual desires. The victim testified that she awoke to find the defendant with his penis in her mouth. Ms. Ballance testified that the day following the incident, she encountered the victim at school, crying, upset and unable to attend class. Ms. Ballance reported to school authorities that the victim said that something inappropriate had happened between her and the defendant. Despite the defendant’s denial that he had committed a crime and his assertion that the victim had fabricated the story to exact revenge for his taking her cell phone away from her, the jury heard the victim testify that she loved the defendant; that he was kind to her; and that she had been happy living with him, her mother and two siblings. Conversely, the jury heard the defendant admit that he did not inform the victim’s father of the text messages, and that it was not until school authorities ^refused to release the victim to him that he mentioned the issue to the victim’s mother.
The defendant is correct that one of the examining physicians at Children’s Hospital noted that the victim indicated that the incident occurred while she was in her bed; however, that same physician’s report in another section states that the victim related that she was on the sofa at the time the defendant inserted his penis in the victim’s mouth. Additionally, the victim consistently testified that she was on the sofa, not her bed, at the time of the incident.
The jury considered the testimony adduced at trial and concluded that the crime happened as the victim reported, and that the victim did not fabricate the allegation in an attempt to exact revenge. The jury determined that the victim, and not the defendant, was credible. The evidence was sufficient for the jury to find the defendant guilty of attempted aggravated incest. There is no merit to this assignment of error.
In his second assignment of error, defendant argues that the trial court erred in its jury instructions. Specifically, he contends that the court failed to make clear that the State had the burden of proving the elements of sexual battery beyond a reasonable doubt.
The record does not indicate that the defendant requested any special jury instructions. Moreover, the defense did *150 not object to the jury charge on aggravated incest until after the jury had retired to deliberate. At that point, defense counsel objected on the ground that the jury was not properly instructed that the State had to prove the elements of sexual battery beyond a reasonable doubt, as well as the elements regarding the victim’s age and familial relationship. La. C.Cr.P. art. 801(C) states that “[a] party may not assign as error the giving or failure to give a I injury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error.” Thus, a defendant must make a timely objection under La. C.Cr.P. art. 801 in order to preserve a jury charge issue for review. See La. C.Cr.P. art. 841. This issue has not been preserved for appellate review.
Nevertheless, the defendant’s argument regarding the jury charge is without merit.
Under La. C.Cr. P. art. 802(1), the trial court is required to charge the jury “[a]s to the law applicable to the ease.”
In this case, the trial judge charged the jury as follows:
Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under 18 years of age and is known to the defendant to be related to the defendant in any of the following: [b]iological, step, or adopted relative, child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew or niece.
Therefore, in order to convict the defendant of aggravated incest, you must find that the defendant engaged in a prohibited act. The prohibited act alleged by the prosecution in this matter is sexual battery; two, that the victim was under the age of 18; and three, that the defendant is related to the victim as her stepfather... To convict the defendant of this charge, you must find beyond a reasonable doubt that the State proved every element of the charge.
[[Image here]]
I’ll also define the alleged underlying act which is sexual battery. Sexual battery is the intentional touching of the anus or genitals of a person when the defendant touches without the person’s consent. (Emphasis supplied.)
At this point, the State and defense had a bench conference with the trial court, after which, the trial court read the definition of sexual battery again:
Sexual battery is the intentional touching of the anus or genitals of the person when the defendant touches without the person’s |n consent. Sexual battery is also-committed when the defendant intentionally causes the person to touch the anus or genitals of the defendant without the person’s consent. The touching may be accomplished by using any part of the body or by using an instrumentality.
In this case, the trial judge properly charged the jury as to the State’s burden of proof. The charges taken as a whole correctly instructed the jury. However, harmless error can be applied even to an invalid instruction on the elements of the crime if the evidence is otherwise sufficient to support the jury’s verdict, and the jury would have reached the same result if it had never heard the erroneous instruction. See State v. Hongo, 96-2060, pp. 4-5 (La.12/02/97), 706 So.2d 419, 421-22. A trial error is harmless when a reviewing court is convinced that the error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The state has the burden of demonstrating that the trial error did not contribute to defendant’s conviction. If a reviewing court *151 finds that the trial record establishes guilt beyond a reasonable doubt, the interest of fairness has been satisfied and the judgment should be affirmed. Rose v. Clark, 478 U.S. 570, 579, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986). Based upon the law and facts adduced at trial, if there was any error in the jury charge, the defendant’s conviction was not attributable to any such error. See Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993). This assignment of error is without merit.
The defendant argues in the third assignment of error that the trial court erred in allowing the State to introduce and play the victim’s videotaped forensic interview. Defense counsel objected to the introduction of the statement “based on the fact that the recording clearly showed an unidentified blond woman in the 1^interview room talking to the victim before ... the forensic interviewer, began asking questions.”
La. R.S. 15:440.4 and 15:440.5 are designed to ensure the reliability of the videotaped oral statement of a child victim. “[La. R.S.] 15:440.4(A) provides five requirements which must be satisfactorily proven before such a videotape can be considered competent evidence. [La. R.S.] 15:440.5(A) provides eight requirements, some of which overlap those in [La. R.S.] 15:440.4(A), for the videotape to be admissible.” State v. Ledet, 96-0142, p. 9 (La.App. 1 Cir. 11/8/96), 694 So.2d 336, 342.
In this case, the defense argues that one requirement of La. R.S. 15:440.5(A) was not met, which is that “[ejvery voice on the recording [be] identified.” La. R.S. 15:440.5(A)(5). The defendant maintains that that deficiency renders the videotape inadmissible.
In Ledet, the defendant was convicted of the forcible rape of his twelve-year-old daughter. The defense sought to exclude the victim’s videotaped forensic interview on the basis of unidentified background sounds and/or voices heard on the tape. The interviewer identified the sounds as the police department intercom system, which he explained remained on twenty-four hours a day unless a special request was made to turn it off. He testified that he simply forgot to request that the system be turned off at the time he took the victim’s statement. He further stated that other than the intercom sounds, the only voices heard on the videotape were his and the victim’s; that no other persons participated in the interview; and that no attorneys or relatives of the victim were present during the interview. The First Circuit refused to exclude the forensic interview, concluding:
| ^Revised Statutes 15:440.4 and 15:440.5 are designed to ensure the reliability of a child’s statement. We believe the purpose of 15:// 0.5(A) (5) is to identify anyone who might have influenced the outcome of the interview by questions, comments, or responses. Defendant has not alleged, nor has he shown, that these “voices” belonged to anyone participating in or listening to the interview or anyone in the same room with Wolfe and the victim. Wolfe “identified” these “voices” as the police intercom system, and, in our opinion, that identification is sufficient under the particular facts of this case. Thus, the trial court did not err in denying defendant’s motion to suppress and in admitting the videotaped statement at trial. (Emphasis supplied.)
Ledet, 96-0142, p. 10, 694 So.2d at 342-43.
In this case, during cross examination of Ms. Verrett, the forensic interviewer, the defense sought the identity of the “blond woman” seen at the beginning of the tape. Ms. Verrett testified that she did not know the identity of the woman, but she did say:
*152 Actually, she wasn’t the — the interview had not begun. So if that person was in the room, it was because she was one of the workers at the center or something. But she was not on the interview tape.
A review of the tape indicates that the blond woman is speaking to the victim when Ms. Verrett enters the room. Their conversation is very brief — less than eleven seconds — and the victim is heard to refer to “Harry Potter.” Moreover, their conversation terminates when Ms. Verrett enters the interview room. The woman introduces Ms. Verrett to the victim and then immediately leaves the room and closes the door behind her. No one other than Ms. Verrett is in the room with the victim, and only Ms. Verrett communicates with the victim as the interview commences. The tape itself corroborates this: nobody else is seen in the video portion; no other voices are heard on the audio; and the participants make no | ^gestures or references to anybody else in the room. Voices on the recording can be identified as those of Ms. Verrett and the victim, who both testified at trial.
It is apparent from the tape and Ms. Verrett’s testimony that the blond woman was an employee of the Children’s Advocacy Center who ushered the victim into the interview room to await Ms. Verrett’s arrival. The tape clearly indicates that Ms. Verrett did not begin the interview until after the woman exited the room. There is no evidence that the woman “influenced the outcome of the interview by questions, comments, or responses.” Ledet, 96-0142, p. 10, 694 So.2d at 342. The jury saw and heard each of the witnesses, thus placing it in the superior position to accept Ms. Ver-rett’s version of the interview, which is corroborated by the tape itself.
“Nevertheless, if the evidence was erroneously admitted at trial, the trial court’s ruling is subject to the harmless error analysis.” State v. Hugle, 2011-1121, p. 19 (La.App. 4 Cir. 11/7/12), 104 So.3d 598, 613 (citing Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).[3] The test for determining harmless error is “whether the guilty verdict actually rendered in this trial was surely unattributable to the error.” Sullivan, supra, 508 U.S. at 279, 113 S.Ct. at 2081. The defendant has failed to identify anything that would suggest he was prejudiced by the videotape’s introduction. This assignment is without merit.
In the fourth assignment of error, the defendant argues the trial court erred in refusing to grant a mistrial under La. C.Cr.P. art. 775. The defendant claims that the defense impermissibly referenced his post-arrest right to remain silent in violation of Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91(1976).
|1BIn Doyle, the United States Supreme Court held that “the use for impeachment purposes of [defendant’s] silence at the time of arrest and after receiving Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment, since those warnings implicitly assure that silence will carry no penalty.” Id., 426 U.S. at 617, 96 S.Ct. at 2244.
However, in Jenkins v. Anderson, 447 U.S. 231, 240, 100 S.Ct. 2124, 2130, 65 L.Ed.2d 86 (1980), the Supreme Court held that the defendant’s constitutional rights were not violated when the prosecution, in its cross-examination of the defendant, referred to his pre-arrest silence in an attempt to impeach his credibility. Id. at 240,100 S.Ct. at 2130. The Court concluded that “the use of [pre-arrest] silence to impeach a defendant’s credibility does not *153 violate the Constitution.” Id. at 24CM1, 100 S.Ct. at 2130.
The Louisiana Supreme Court has followed this reasoning:
In the case of pre-arrest silence, in which “[t]he failure to speak occur[s] before the petitioner [is] taken into custody and given Miranda warnings,” and in which “no governmental action induce[s] petitioner to remain silent,” “the fundamental unfairness present in Doyle is not present.” Jenkins v. Anderson, 447 U.S. 231, 240, 100 S.Ct. 2124, 2130, 65 L.Ed.2d 86 (1980). Neither Doyle specifically, nor the Due Process Clause generally, bars the inquiry. Jenkins, 447 U.S. at 239-40, 100 S.Ct. at 2129-30. In addition, Jenkins made clear, without expressly deciding “whether or under what circumstances pre-arrest silence may be protected by the Fifth Amendment,” id., 447 U.S. at 236 n. 2,100 S.Ct. at 2128, that by taking the stand and exposing himself to cross-examination, “a defendant waives any Fifth Amendment privilege he may have against the use of his pre-arrest silence for impeachment purposes.” Id., 447 U.S. at 235-36, 100 S.Ct. at 2127-28 (discussing Raffel v. United States, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926)). The federal constitution therefore leaves undisturbed the common law tradition which “allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted.” Jenkins, 447 U.S. at 239, 100 S.Ct. at 2129 (citing 11fi3A J. Wigmore, Evidence, § 1042, p. 1056) (Chadbourn rev.1970).
State v. Richards, 99-0067, p. 2 (La.9/17/99), 750 So.2d 940, 941.
The basis for the defendant’s complaint in this case occurred during the prosecution’s cross-examination of the defendant as follows:
Q. Mr. Alverez, you said you didn’t tell your wife about the text messages that you saw on [the victim’s] cell phone?
A. No. Not until — I briefly gave her a description after I couldn’t get [the victim] out of school. But no, I didn’t go into detail.
Q. And did you tell your wife about the supposed threats that [the victim] made to you?
A. No.
Q. Did you tell anybody the supposed threats that [the victim] made to you?
A. No. It wasn’t really — it didn’t mean too much to me. So no, I didn’t.
Q. When Detective Ross came, did you tell her about the supposed threats that [the victim] made to you?
Before the defendant could answer the question, defense counsel objected and moved for mistrial, which the trial court denied. However, at the defendant’s request and prior to the resumption of questioning, the trial court admonished the jurors in compliance with La. C.Cr.P. art. 771 that they were to a.ttach no significance to the fact that the defendant did not make a statement to police and to disregard the question.
Det. Ross testified that she spoke with the defendant on October 15, 2008, when she went to his home to photograph the residence. She also indicated that the defendant was not arrested at that time. In fact, the defendant was not arrested until October 16, 2008, when he “remanded himself to the Sex Crimes Bureau.” |17The prosecutor’s use of the phrase “when Detective Ross came” limits the time frame in question to her arrival at the victim’s residence on October 15, 2008, which was prior to his arrest. Consequently, as the prosecution did not reference the defendant’s *154 silence after he was arrested and advised of his Miranda rights, but rather his pre-arrest silence, Doyle is not applicable in this instance.
“[M]istrial is a drastic remedy which should only be declared upon a clear showing of prejudice by the defendant.” State v. Leonard, 2005-1382, p. 11 (La.6/16/06), 932 So.2d 660, 667 (citations omitted). “The determination of whether actual prejudice has occurred, and thus whether a mistrial is warranted, lies within the sound discretion of the trial judge, and this decision will not be overturned on appeal absent an abuse of that discretion.” State v. Wessinger, 98-1234, p. 24 (La.5/28/99), 736 So.2d 162, 183. Here, the defendant has made no showing of prejudice as the result of the prosecutor’s reference to his pre-arrest silence. Thus, we find the trial court did not abuse its discretion in refusing to invoke the drastic measure of a mistrial.
This assignment is without merit.
In his fifth and sixth assignments of error, the defendant complains that his counsel’s performance was deficient because counsel failed to preserve for appellate review the issue of the excessiveness of the sentence.
Generally, the preferred procedure for addressing ineffective assistance of counsel claims is a post-conviction proceeding in the trial court. State v. Watson, 2000-1580, p. 4 (La.5/14/02), 817 So.2d 81, 84 (citing State v. Deloch, 380 So.2d 67, 68 (La.1980)). A post-conviction proceeding provides for a full evidentiary hearing to be conducted to explore the issue. Id. (citing State v. Stowe, 93-2020 (La.4/11/94), 635 So.2d 168, 173; Deloch, supra). When the record is sufficient, |18as it is here, this issue may be resolved on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528, 530 (La.1982).
This court has acknowledged that a defendant asserting an ineffective assistance of counsel claim must overcome a “sound trial strategy” presumption:
A court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action “might be considered sound trial strategy.” Strickland v. Washington, 466 U.S. at 689, 104 S.Ct. at 2065. If an alleged error falls “within the ambit of trial strategy,” it does not “establish ineffective assistance of counsel.” State v. Bienemy, 483 So.2d 1105, 1107 (La.App. 4 Cir.1986). (citations omitted). Moreover, “[w]hile opinions may differ on the advisability of such a tactic, hindsight is not the proper perspective for judging the competence of counsel’s trial decisions. Neither may an attorney’s level of representation be determined by ' whether a particular strategy is successful.” State v. Brooks, 505 So.2d 714, 724 (La.1987).
State v. Skipper, 2011-1346, p. 7 (La.App. 4 Cir. 10/10/12), 101 So.3d 537, 542. This court has further stated that “[i]n order to prevail, a defendant must establish that counsel’s performance was deficient and that the deficiency prejudiced him.” State v. Cavazos, 2011-0733, p. 19 (La.App. 4 Cir. 5/16/12), 94 So.3d 870, 883 (quoting Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Counsel’s performance is considered ineffective when it can be shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed to the defendant by the Sixth Amendment. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.
*155 In the instant case, the defendant notes his trial counsel failed to make an oral motion, file a written motion for reconsideration of sentence, or object to the sentence in any way. La.C.Cr.P. art. 881.1 E provides:
|19Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
However, the mere failure to file a motion to reconsider sentence does not constitute ineffective assistance of counsel. A basis for ineffective assistance of counsel may only be found if a defendant can show a reasonable probability that but for counsel’s error, his sentence would have been different. State v. Bertrand, 2004-1496, p. 5 (La.App. 4 Cir. 12/15/04), 891 So.2d 752, 756. This brings us to a consideration of the defendant’s contention, as expressed in his sixth assignment of error, that his sentence was excessive.
Louisiana Constitution of 1974, art. I, § 20 provides, in pertinent part, that “[n]o law shall subject any person to ... excessive ... punishment.” “Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness.” State v. Smith, 2001-2574, p. 6 (La.1/14/03), 839 So.2d 1, 4 (citation omitted). A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355, 357 (La.1980). A trial judge has broad discretion when imposing a sentence, and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. State v. Cann, 471 So.2d 701, 703 (La.1985). On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion. State v. Walker, 2000-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462.
|20An appellate court reviewing a claim of excessive sentence must determine whether the trial court adequately complied with the statutory guidelines in La. C.Cr.P. art. 894.1, as well as whether the facts of the case warrant the sentence imposed. State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982). However, the articulation of the factual basis for a sentence is the goal of Article 894.1, not rigid or mechanical compliance with its provisions. State v. Major, 96-1214, p. 10 (La.App. 4 Cir. 3/4/98), 708 So.2d 813, 819. Where the record clearly shows an adequate factual basis for the sentence imposed, resentenc-ing is unnecessary even when there has not been full compliance with Article 894.1. State v. Landos, 419 So.2d 475 (La.1982). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art.-881.4(D).
If the reviewing court finds adequate compliance with Article 894.1, it must then determine whether the sentence the trial court imposed is too severe in light of the particular defendant as well as the circumstances of the case, “keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged.” State v. Landry, 2003-1671, p. 8 (La.App. 4 Cir. 3/31/04), 871 So.2d 1235, 1239.
The defendant in this case was convicted of attempted aggravated incest. La. R.S. 14:78.1(D)(1) provides that “[a] person con *156 victed of aggravated incest shall be fined an amount not to exceed fifty thousand dollars, or imprisoned, with or without hard labor, for a term of not less than five years nor more than twenty years, or both.” La. R.S. 14:27(D)(3) provides that a person convicted of attempt “shall be fined or imprisoned or both, in the same manner as for the offense attempted” and “such fine or imprisonment shall not exceed one-half of the largest 121fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.” Consequently, upon his conviction for attempted aggravated incest, the defendant faced the penalty of a fine of not more than twenty-five thousand dollars, or imprisonment for a term not more than ten years. He received a six year sentence, well below the statutory maximum, and no fine.
The defendant correctly notes that the trial court gave no reasons for imposing the six year sentence. Further, he contends the sentence is excessive under the circumstances of his case, i.e., that he was gainfully employed at the time of trial; he was supporting his wife and children; he had been married to his wife for eleven years; and he had a good relationship with the victim. He argues that the trial court should have taken into account that the incident alleged by the victim was a single event, which was uncharacteristic of his behavior, and that he had no criminal record or history of inappropriate behavior.
In support of his position, the defendant requests that this court consider the sentence imposed in State v. White, 37,815, p. 1 (La.App. 2 Cir. 12/17/03), 862 So.2d 1123, 1124, where a stepfather with no prior criminal record pled guilty to attempted aggravated incest, and the trial court imposed a sentence of six years at hard labor, suspending three of those years and placing the defendant on five years supervised probation. In finding that the sentence was not unconstitutionally excessive, the Second Circuit noted that only three of the six years were to be served. However, the court also emphasized that the defendant had taken advantage of his position as stepfather of the victim. Id., p. 2, 862 So.2d at 1125.
The record in this case indicates that the victim loved the defendant, a person who, in her eyes, held a position of authority and trust. In her innocence she could not comprehend his reprehensible conduct. As if the physical abuse of Lathe victim was not enough, the defendant further damaged the victim mentally by burdening her with the twisted notion that she would be at fault and responsible for the disintegration of their family and her mother’s and biological father’s relationship if she told anyone of his conduct. The defendant’s conduct will have a lifetime effect upon the victim, not just a mere six years.
In response to the defendant’s argument of support from the White case, we noted that in State v. Kennedy, 42,850 (La.App. 2 Cir. 1/9/08), 974 So.2d 203, the appellate court concluded that a ten year sentence for the defendant’s guilty plea to attempted aggravated incest was not excessive, even though the defendant was a first-time offender. See also State v. Gann, 40,058 (La.App. 2 Cir. 9/21/05), 911 So.2d 384.
Considering the facts elicited at trial, it cannot be said that the defendant received an excessive sentence, especially considering that the State proved the defendant guilty of aggravated incest. Thus, because the defendant has failed to prove his sentence excessive, he cannot demonstrate that he received ineffective assistance of counsel owing to his counsel’s failure to file a motion to reconsider sentence. These assignments of error have no merit.
*157 Accordingly, for the reasons stated herein, the defendant’s conviction and sentence are affirmed.
AFFIRMED

. La. R.S. 14:78, relative to Incest, and La. R.S. 14:78.1, relative to Aggravated incest, were repealed by Acts 2014, No. 177, § 2 and Acts 2014, No. 602, § 7, eff. June 12, 2014. Specifically, § 3 of Acts 2014, No. 177 and § 8 of Acts 2014, No. 602 provide:
The Louisiana State Law Institute is hereby directed to change all references in Louisiana law from "incest” to "crime against nature” and from "aggravated incest” to "aggravated crime against nature” to reflect the changes made in this Act.

. The recording was played for the jury.

. Writ. den. 2012-2721 (La.6/14/13), 118 So.3d 1079.